UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21705-CIV-KING/GARBER

OSVALDO A. IZQUIERDO COLON,
an individual, and d/b/a BEST DEAL
PERFORMANCE

        Plaintiff,

v.

JET PERFORMANCE PRODUCTS,
INC., a California corporation,

        Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW IN SUPPORT

The Defendant, JET PERFORMANCE, INC. ("JET PERFORMANCE"), by and through its

undersigned counsel and pursuant to Local Rule 7.5 and Rule 56 of the Federal Rules of Civil

Procedure, hereby files its Motion for Summary Judgment and Memorandum of Law in Support, and

as grounds therefore, states:

### Introduction

This court should grant JET PERFORMANCE's motion for summary judgment because it is

undisputed that JET PERFORMANCE had a good faith belief that Plaintiff was infringing JET

PERFORMANCE's copyrights and trademarks when it filed the Notice of Claimed Infringement

with eBay that is the basis of this action. JET PERFORMANCE's actions complied with the express

terms of the Digital Millennium Copyright Act (DMCA) and eBay's policies in all respects, and

nothing JET PERFORMANCE did violated federal law.

Summary judgment should also be granted with respect to Plaintiff's state law claims.  These

claims, which are based on the very same actions that form the basis for Plaintiff's claim under the

DMCA, are preempted by federal law.  Moreover, even if they are not preempted, there is no dispute

of material fact that Plaintiff cannot establish these claims, and they should be dismissed on

summary judgment.

Finally, summary judgment should also be granted on Plaintiff's claim for a declaratory

judgment as there is no case and controversy.  Plaintiff has no viable federal claim, and he cannot

present facts to support an actual controversy.  Therefore, this Court should grant JET

PERFORMANCE's motion for summary judgment in its entirety.

JET PERFORMANCE incorporates herein by reference its Statement of Undisputed Facts

(DE 19), and the exhibits thereto, submitted in connection with this Motion for Summary Judgment.

JET PERFORMANCE respectfully refers the Court to the Statement of Undisputed Facts for a

comprehensive recitation of the facts applicable to this Motion for Summary Judgment.

## MEMORANDUM OF LAW

Plaintiff's complaint sets forth five claims, all of which stem from JET PERFORMANCE's

VeRO Notice submitted to eBay to remove listings of JET PERFORMANCE products.  Count I is

entitled Misrepresentation of Copyright Infringement under the DMCA, 17 USC §512(f); Count II is

entitled Tortious Interference with a Contract; Count III is entitled Tortious Interference with

Prospective Economic Advantage; and Count IV is entitled Unfair, Deceptive and Fraudulent

Business Practices.  In Count V Plaintiff seeks a declaratory judgment that he is authorized to sell

items incorporating JET PERFORMANCE's intellectual property, and preventing JET

PERFORMANCE from further interfering with Plaintiff's sales. JET PERFORMANCE is entitled

to summary judgment on all claims.

## I. STANDARD OF REVIEW ON SUMMARY JUDGMENT

The standard to be applied by a district court in considering a summary judgment motion is

stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue
> as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

*Fed. R. Civ. P. R. 56.*

> The plain language of Rule 56(c) mandates the entry of summary judgment...against a
> party who fails to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of proof at
> trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 222 (1986).

"The party moving for summary judgment has the initial burden of identifying for the trial

court the absence of genuine issues of fact, but once this burden is satisfied, summary judgment is

mandated if the nonmovant fails to come forward with specific evidence demonstrating a triable

issue of fact as to each essential element of his case." *Celotex,* 477 U.S. at 322-23. An issue of fact is

genuine if a reasonable jury could return a verdict for the Plaintiff. *Id.*

## II. JET PERFORMANCE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HAD A GOOD FAITH BELIEF WHEN IT FILED THE NOTICE OF INFRINGEMENT.

In 1998, Congress enacted the Digital Millennium Copyright Act ("DMCA") in an effort to

resolve copyright enforcement problems caused by the unprecedented use of the Internet. Title II of

the DMCA contains several measures designed to enlist the cooperation of Internet and other online

service providers to combat ongoing copyright infringement. *See Rossi v. Motion Picture Association of America,* 391 F. 3d 1000 (9th Cir. 2004). "Title II preserves strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment." *Id.* at 1003, *quoting* H.R. Rep. 105-551, pt. 2, at 49 (1998).

When a copyright owner suspects his copyright is being infringed on the Internet, he must follow the notice and takedown provisions set forth in § 512(c)(3)(A) of the DMCA, which provides, in part:

> (A) To be effective under this subsection, a notice of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
>   (i)  A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly being infringed.
>
>   (ii)  Identification of the copyrighted work claimed to have been infringed...
>
>   (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material
>
>   (iv)  Information reasonably sufficient to permit the service provider to contact the complaining party...
>
>   (v) A statement that the complaining party **has a good faith belief** that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

17 U.S.C. § 512(c) (*emphasis added*).

Section 512(f) prohibits a party from making knowing material misrepresentations that a material or activity is infringing.

> Misrepresentations- Any person who knowingly and materially
> misrepresents under this section- (1) that material or activity is
> infringing, or (2) that material or activity was removed or disabled by
> mistake or misidentification, shall be liable for any
> damages...incurred by the alleged infringer...who is injured by such
> misrepresentation, as the result of the service provider relying upon
> such misrepresentation in removing or disabling access to the
> material.

17 U.S.C. § 512(f).

A claim for misrepresentation under § 512(f) is expressly limited to those situations where

the copyright owner's notification is "knowing" and "material," and it imposes liability for damages,

fees and costs incurred by an alleged infringer injured by a copyright owner's misrepresentations.

The courts that have analyzed this requirement have all held that the term "knowing

misrepresentation" as used in the DMCA, requires "[a]ctual knowledge of misrepresentation." *Rossi,*

391 F. 3d at 1005; *Dudnikov v. MGA Entertainment, Inc.*, 410 F. Supp. 2d 1010, 1012 (D.Colo.

2005)(holding that "as long as [the defendant] acted in the good faith belief that infringement was

occurring, there is no cause of action under section 512(f).")

In *Rossi*, the 9th Circuit held that the good faith standard under § 512(c) is a subjective rather

than objective standard because a claim for improper infringement notifications under § 512(f) is

expressly limited to those situations where the copyright owner's notification is a "knowing" and

"material" misrepresentation. *Id.* at 1004-05. In *Rossi*, the plaintiff operated a website that allowed

users to download movies copyrighted by the defendant, MPAA. MPAA viewed the plaintiff's

website and, believing that it was illegally infringing its copyrighted movies, sent a notice of claimed

infringement pursuant to the DMCA to the plaintiff and his ISP. After the ISP shut down the

Plaintiff's website, Plaintiff sued MPAA alleging that MPAA did not have a good faith belief under

§ 512(c)(3)(A)(v) that the Plaintiff was illegally infringing its copyrights. *Id.*

The court granted MPAA's motion for summary judgment and held that interpretive case law and the statutory language of §512(c) support the conclusion that the "good faith belief" requirement encompasses a subjective, rather than objective, standard. *Id.* at 1004. The Ninth Circuit went on to state that in "§ 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation . . . there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id.* at 1004-1005. Because the court found "no suggestion in the record that MPAA's belief regarding [the plaintiff's] asserted infringement was other than sincere," it found that MPAA met the good faith belief requirement and, accordingly, summary judgment was granted. *Id.* at 1005.

In *Dudnikov*, the plaintiffs, eBay sellers, sued the copyright owner, MGA, under § 512 alleging that its notice of claimed infringement was made without regard to trademark or copyright law, and was an attempt to control the online auction market. There, the plaintiffs listed a fleece hat with MGA's copyrighted Bratz® applique affixed to it on eBay. After viewing the plaintiffs' auction and forming a good faith belief that the auction infringed on MGA's intellectual property rights, MGA sent a notice of claimed infringement to eBay through its VeRO program, after which eBay terminated the plaintiffs' auction. In response, the plaintiffs sued MGA for improperly terminating their auction, and attacked MGA's good faith belief as being unreasonable and its notice as being untruthful. However, the court relied on MGA's Senior Counsel's Declaration which asserted and explained MGA's good faith belief. The *Dudnikov* court held that "as long as MGA acted in a good faith belief that infringement was occurring, there is no cause of action under section 512(f). Plaintiff's claim for perjury must be supported by substantial evidence that MGA knowingly and

materially misrepresented plaintiff's infringement when it utilized eBay's VeRO program to have the auction shut down." *Dudnikov*, 410 F. Supp. 2d at 1012. Thus, the court held that the DMCA provides a subjective good faith standard for notification by owners of suspected infringement.

In this case the undisputed facts show that JET PERFORMANCE had a good faith belief that infringement was occurring when it notified eBay under the VeRO program and submitted the VeRO Notice regarding the subject listings. (DE 19 ¶¶ 17-20). As the Declaration of Donnie Miller explains, JET PERFORMANCE had a good faith basis for filing the notice of claimed infringement. (DE 19, ¶¶ 19-20 and Ex. 1). This good faith basis was formed when JET PERFORMANCE became aware of and saw the plaintiff's listings which included pictures of JET PERFORMANCE's products, used the JET PERFORMANCE name throughout the listings, and incorporated the JET PERFORMANCE Jet Logo, Copyrighted Text and Programmer Image. (DE 19 ¶¶ 17-19 and Ex. 1). Based on these observations, the VeRO Notice of at issue was submitted to eBay. (DE 19 ¶¶ 19-20 and Ex. 1).

Plaintiff cannot demonstrate that JET PERFORMANCE knowingly and materially misrepresented plaintiff's infringement when it utilized eBay's VeRO program and eBay terminated plaintiff's listings. Therefore, under the reasoning of *Rossi* and *Dudnikov*, and the plain language of the statute, JET PERFORMANCE cannot be held liable to the plaintiff for violating § 512(f), and summary judgment should be entered.

### III.  SINCE PLAINTIFF'S FEDERAL CLAIMS FAIL, THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to plaintiff's federal claim. *United Mineworkers v. Gibbs*, 383

U.S. 715 (1966). Pendent jurisdiction encompasses two elements. First, for the federal court to have power to hear the state claims, the court "must have jurisdiction over a substantial federal claim and the federal and state claims must arise from a 'common nucleus of operative fact." *Id.* Even when the power to hear the claim exists, the decision to exercise that power and dismiss the pendent claims is discretionary with the trial judge. *Id.* at 726. Where federal claims are dismissed, it is proper for a district court to decline to exercise pendent jurisdiction over state law claims. *Id.*

In this case, Plaintiff asserted both federal and state law causes of action based upon the eBay VeRO Notice. Plaintiffs' DMCA claim is defeated in the face of JET PERFORMANCE's compliance with the statute. Therefore, this Court should refuse to exercise its authority to hear the Plaintiff's pendent state law claims.

### IV. PLAINTIFF'S STATE LAW CLAIMS MUST FAIL BECAUSE THEY ARE PREEMPTED BY FEDERAL COPYRIGHT LAW

Plaintiff asserts state law claims of tortious interference with a contract (Count II), tortious interference with prospective economic advantage (Count III), and violation of Unfair, Deceptive and Fraudulent Business Practices under Florida and California law (Count IV). These claims are preempted by federal copyright law.

The Copyright Act preempts state law that is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a) (1996). "The [Copyright] Act establishes a comprehensive set of rights and remedies to protect copyright, and preempts most state actions so that the rights and remedies will be consistent for all copyright holders." *Foley v. Luster*, 249 F.3d 1281, 1286 (11th Cir. 2001). *See also Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305 (11th Cir. 2001)(state unfair competition claims preempted by copyright law).

Whether a state law claim is preempted by the Copyright Act involves a two-part inquiry: "(1) the work must be within the scope of the subject matter of copyright, and (2) the state law rights must be equivalent to any exclusive rights within the scope of federal copyright. *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 713 (D. Md. 2001). Here, the first prong of the test is met since the subject matter at issue falls within the subject matter of copyright, specifically of whether JET PERFORMANCE had a good faith belief that infringement of its copyrighted works was occurring. *See id.* (the first prong of this test is met when all of Plaintiff's claims involve the alleged infringement of its photographs, and photographs are pictorial works fixed in a tangible medium within the scope of the subject matter of copyright.)

"The second prong of the preemption inquiry requires a court to examine the rights a plaintiff claims under state law to determine whether these rights are equivalent to the exclusive rights granted by the Copyright Act." *Id.* In order to demonstrate that the claims are not equivalent and "[t]o avoid preemption, a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law." *Id.* quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.1993).

In *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539 (1985), the Second Circuit held that a plaintiff's claim of tortious interference with contractual relations was preempted when it was based on the unauthorized publication of a work protected by the Copyright Act. It stated:

> The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element. See 1 Nimmer on Copyright § 1.01[B], at n.46 (1983). As the trial court noted, the fact that cross-appellants pleaded additional elements of awareness and intentional

> interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Id.*

Preemption of state law claims has been specifically held to apply to provisions of the DMCA. *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004). In *Diebold,* the plaintiff alleged both misrepresentation of copyright under the DMCA and tortious interference with contract. In granting the defendant's motion for summary judgment on the plaintiff's state law claim, the court reasoned that in "§ 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions." Additionally, the court opined that:

> Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients. If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.

*Diebold*, 337 F. Supp. 2d at 1205-1206.

Here, compliance with both state and federal laws is impossible, and compliance with state law, as opposed to federal law, would frustrate the purpose of the DMCA. The DMCA allows the very actions upon which the Plaintiff bases his state claims. That is, the DMCA allows a copyright holder, such as JET PERFORMANCE, to submit a VeRO Notice demanding the removal of allegedly infringing material from a website. To hold JET PERFORMANCE liable under state law would create an irreconcilable conflict between the rights granted JET PERFORMANCE under the DMCA, and the claims asserted by the plaintiff. Therefore, the plaintiff's state law claims should be dismissed because they are preempted.

## V. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S STATE LAW INTERFERENCE CLAIMS.

Count II alleges tortious interference with a contract, and Count III alleges tortious interference with prospective economic advantage. To establish a cause of action for interference with a business relationship, contractual relations, or economic advantage, plaintiff must demonstrate "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *See Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1994).

In the case of either tort, the thwarted business relationship need not be evidenced by an enforceable contract if an understanding would have been reached between the plaintiff and the other party but for the interference of the defendant. *See United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668 (Fla. 1979). However, a mere offer to sell does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. *Ethan Allen,* 647 So. 2d at 815. A tortious interference claim requires a relationship with a particular party. *See International Sales & Service, Inc. v. Austral Insulated Products, Inc.,* 262 F.3d 1152, 1155 (11th Cir. 2001). No cause of action exists for tortious interference with a business's relationship to the community at large. *Ethan Allen,* 647 So. 2d at 816. The mere hope that past customers may choose to buy again cannot be the basis for a tortious interference claim. *Id.* Nor can a claim for tortious interference with a business relationship be based on speculation regarding future sales to past customers. *Id.*

Plaintiff's interference claims fail for several reasons. Plaintiff alleges JET PERFORMANCE interfered with "a valid contract with eBay to sell products on its auction site."

(DE 1, ¶ 32). However, the undisputed facts do not support these allegations. eBay never terminated or suspended Plaintiff's account as a result of the VeRO Notices. (DE 19, ¶ 21). Therefore, there was no actionable interference by JET PERFORMANCE with any eBay listing agreement. In addition, Plaintiff received a refund of his listing fees pursuant to eBay's VeRO Program policies, therefore he suffered no damage as a result of the VeRO Notices, at least with respect to his relationship with eBay. (DE 19, ¶ 22).

Plaintiff also claims JET PERFORMANCE interfered with "valid contracts with eBay shoppers who had placed bids on or agreed to purchase his products," and also "caused eBay shoppers who had placed bids or agreed to buy his products to terminate their contracts with Plaintiff." (DE 1, ¶¶ 33, 37). However, because Plaintiff listed his JET PERFORMANCE items at a fixed price with no bidding, the VeRO Notices could not have interfered with any purchases because eBay took down the subject listings and deleted them before anyone could buy the items. (DE 19, ¶ 22).

Plaintiff also blames JET PERFORMANCE for causing "eBay to terminate its contract with Plaintiff by suspending his account." (DE 1, ¶ 36). However, this is false. Plaintiff has never been suspended for any length of time by eBay. (DE 19, ¶ 22). As of November 15, 2007, when his deposition was taken, Plaintiff believed he was no longer in jeopardy of having his account suspended because there has been a lapse of time from when the VeRO Notices were submitted. *Id.* Plaintiff has continued to sell other products on eBay and, at the time of his deposition, was selling 659 items on eBay. *Id.*

Moreover, to the extent Plaintiff is attempting in Counts I and II to allege interference by JET PERFORMANCE with Plaintiff's future business relationships, these claims fail. Interference

claims based upon prospective business relationships are insufficient. *See St. Johns River Water Management Dist. v. Fernberg Geological Services, Inc.*, 784 So. 2d 500, 505 (Fla. 5th DCA 2001) ("[t]he speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship"). Plaintiff cannot demonstrate an actual and identifiable understanding or agreement that forms the basis for his claims. Rather, his interference claims consist solely of rank speculation regarding future success based upon past sales.

Summary judgment must also be granted because Plaintiff suffered no damages as a result of the alleged interference. Plaintiff claims the VeRO Notice stopped him from selling JET PERFORMANCE products on eBay, however Plaintiff's eBay business has flourished. (DE 19, ¶ 23). There has been no change in Plaintiff's eBay business -- other than that he has stopped selling JET PERFORMANCE products -- from the time JET PERFORMANCE submitted the VeRO Notice that is the subject of this action, to the present. *Id.*

Even assuming, *aguendo*, that Plaintiff suffered damages, he can neither compute nor prove his lost profits, which is fatal. Plaintiff bears the burden of proving an entitlement to lost profits. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 3232274 (S.D.Fla. 2007), *citing Montage Group, Ltd. v. Athle-Tech Computer Systems, Inc.*, 889 So.2d 180, 195 (Fla. 2d DCA 2004) (where a jury award for business damages was reversed because evidence of lost profits was speculative.) In order for a business to recover lost prospective profits, a plaintiff must prove not only that the defendant's action caused the damage, but also that there is some standard or "yardstick" by which the amount of damages may be adequately determined. *Id.*

Plaintiff does not know where he purchased the JET PERFORMANCE products in his possession, from whom he purchased them, for what price he purchased them, or what his profits

would be had his sales not allegedly been interfered with. (DE 19, ¶ 29). Because Plaintiff has no

record of what he paid for his JET PERFORMANCE products, he has no way of determining his

damages with any degree of precision or specificity. (DE 19, ¶ 30). Moreover, because prices in the

eBay market for automotive performance products fluctuate, Plaintiff has no way of knowing what

the JET PERFORMANCE products in his possession will sell for in the future. *Id.* These facts

render his damages claim entirely speculative and insufficient to withstand summary judgment.

Finally, the undisputed facts show JET PERFORMANCE was justified in submitting the

VeRO Notice. In fact, plaintiff agreed to participate in the VeRO program in order to sell on eBay,

and he is required to adhere to its policies in order to continue to sell there. (DE 19, ¶ 30). eBay's

VeRO program allows for the very actions that JET PERFORMANCE took, and, as an eBay seller,

Plaintiff assented to the VeRO policies that resulted in the VeRO Notice. *Id.* Moreover, JET

PERFORMANCE was justified to submit the VeRO Notice under the DMCA in order so JET

PERFORMANCE could protect its intellectual property rights. Justification or privilege to interfere

with a contract is a defense to a tortious interference claim. *See Wackenhut Corp. v. Maimone,* 389

So. 2d 656, 658 (Fla. 4th DCA 1980).

The two Courts that have addressed the issue presented here on identical fact patterns have

ruled that good faith compliance with the DMCA provides a complete defense to claims of

interference. *Rossi,* 391 F. 3d at 1007; *Dudnikov,* 410 F. Supp. 2d at 1014, 1019. In *Rossi,* the 9th

Circuit of Appeals affirmed the district court's dismissal of the plaintiff's tortious interference claims

based on the defendant's compliance with the DMCA and its justifiable response to plaintiff's

infringing website. *Id.* The *Dudnikov* court likewise held that the plaintiff's tortious interference

was justified because the defendant "was acting within its rights in submitting the [Notice of

Claimed Infringement], and the [Notice of Claimed Infringement] could not, as a matter of law, be improper interference." *Dudnikov*, 410 F. Supp. 2d at 1014, 1019.

Under these circumstances, JET PERFORMANCE cannot be held liable to Plaintiff for interference with contract or prospective economic advantage.

## VI. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S UNFAIR, DECEPTIVE AND FRAUDULENT BUSINESS PRACTICE CLAIMS.

Count IV simply alleges that JET PERFORMANCE's "conduct constitutes unfair, deceptive, and fraudulent business practices under the California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 (2005)." (DE 1, ¶ 45). These claims fail for the same reason Plaintiff's interference claims fail, namely that there is no dispute of material fact that JET PERFORMANCE's act of filing the VeRO Notice at issue did not constitute fraudulent, deceptive or unfair conduct, that JET PERFORMANCE was within its rights to submit the VeRO Notice, and the VeRO notice did not damage the Plaintiff.

The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Fla. Stat. § 501.204(1).* FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Fla. Stat. § 501.202(2).* The Florida Supreme Court has held that "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

A claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). None of the material facts of this case rise to the level sufficient to demonstrate all three elements to show a violation of FDUTPA. First, nothing JET PERFORMANCE did was unfair, deceptive or fraudulent. Moreover, JET PERFORMANCE did nothing that was immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff. All JET PERFORMANCE did was exercise its right under the DMCA and eBay's VeRO Program policies to submit a VeRO Notice based upon listings JET PERFORMANCE believed, in good faith, infringed upon its intellectual property rights. There is no dispute of material fact to the contrary.

Second, causation is completely absent. As noted above, the result of the VeRO Notice in question was simply that two listings were removed from eBay. Plaintiff admits no other consequences resulted. For the same reason, actual damages sufficient to satisfy the third element of FDUTPA are also absent.

Concerning Plaintiff's allegations under Cal. Bus. & Prof. Code, § 17200[1], as an analogous consumer protection statute to FDUTPA, Plaintiff's California law claim should fail for the same reasons his FDUTPA claim fails. Moreover, Plaintiff has never articulated why a California consumer protection law should apply here, and in fact under Florida choice of law principles it does not.

On questions of choice of law, Florida applies the most significant relationship test. *See Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir.

---

1 The section cited by Plaintiff, Cal. Bus. & Prof. Code, § 17200, simply provides a definition of unfair competition, including unfair and deceptive acts and practices. Defendant assumes Plaintiff intended to add "*et. seq.*" to this citation in order to refer to the sections following § 17200 that contain the actual prohibitions.

2007). To determine what state has most significant relationship, courts consider: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the place of incorporation and place of business of the parties; and (4) where the relationship between the parties was centered. *Id.* Applying these principles to the instant case, Florida would appear to have the most significant relationship for the purpose of choice of law. *See, Lydia Sec. Monitoring, Inc. v. Alarm One, Inc.,* Case No. 07-80145 CIV-RYSKAMP/JOHNSON, 2007 U.S. Dist. LEXIS 62087 at *13-14 (S.D. Fla. August 23, 2007)(applying FDUTPA rather than Cal. Bus. & Prof. Code, § 17200, *et. seq.,* based upon Florida choice of law principles). Therefore, Plaintiff's California claim should be dismissed.

## VII. PLAINTIFF HAS SUFFERED NO ACTIONABLE HARM, IS SEEKING AN ADVISORY OPINION, AND NO ACTUAL CONTROVERSY EXISTS.

Plaintiff seeks a broad declaratory judgment that "the Plaintiff's sale of product is lawful and does not infringe on [JET PERFORMANCE's] copyright, trademark, or other rights." (DE 1 at 11). Plaintiff also requests injunctive relief "prohibiting [JET PERFORMANCE] from further interfering with the sale of Plaintiff's products and requiring [JET PERFORMANCE] to rescind its notices of claimed infringement with eBay." *Id.* Plaintiff claims he is entitled to a declaratory judgment and injunctive relief based upon JET PERFORMANCE's acts that were in compliance with the DMCA. However, because no controversy was created by JET PERFORMANCE's actions, and because Plaintiff is impermissibly requesting an advisory opinion of the court, JET PERFORMANCE is entitled to summary judgment on Count V.

Pursuant to Article III of the United States Constitution and 28 U.S.C. § 2201, there must be an "actual controversy" for subject matter jurisdiction to be present. *See MedImmune, Inc. v. Genentech, Inc.,* __ U.S. __, 127 S. Ct. 764, 771 (2007). "[T]he dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and []it [must] be

'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' *Id.,* quoting, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937).

At an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision. *United States Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991). A party invoking the jurisdiction of a federal court must allege that it has suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984)

A declaratory judgment simply does not lie here. Plaintiff has admitted that what eBay may or may not do as a result of VeRO Notices is purely speculative. (DE 19, ¶26). Possible punishment ranges from eBay doing nothing, to suspending Plaintiff for a week, two weeks, three weeks, a month, forever, or something in between. *Id.* Whatever plaintiff's ultimate punishment may be, if any, the decision to suspend his account is completely up to eBay and has nothing to do with JET PERFORMANCE. *Id.* Even if eBay suspended Plaintiff, the facts show that nothing prevents him from selling his inventory anywhere else, including other on websites on the internet. (DE 19, ¶28). Plaintiff could take the three or four JET PERFORMANCE items he has in inventory that he has not sold and sell them elsewhere. *Id.* As a result, Plaintiff cannot show actual or threatened injury, that the alleged injury can be traced to JET PERFORMANCE, or that a declaratory judgment would provide redress for this alleged injury.

Plaintiff's claim for declaratory relief appears to be moot because as of November 15, 2007, when his deposition was taken, Plaintiff believed he was no longer in jeopardy of having his account suspended because there has been a lapse of time from when the VeRO Notices were submitted. (DE 19, ¶27). For a declaratory judgment to be entered, the alleged controversy must be real, and disputes as to rights or obligations of the parties with respect to activities that have been discontinued are moot. *See Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015-16 (9th Cir. 1989). "The requisite case or controversy is absent where a plaintiff no longer wishes- or is able to engage- in the activity concerning which it is seeking declaratory relief." *Gator.com v. LL. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005).

## CONCLUSION

For the foregoing reasons, this Court should enter a summary judgment dismissing the Plaintiff's Complaint against JET PERFORMANCE, with prejudice on all counts, and award such other relief as it deems just and proper.

Respectfully submitted,
SEIDEN, ALDER, MATTHEWMAN & BLOCH, P.A.
Attorneys for Defendants
2300 Glades Road, Suite 340 West
Boca Raton, FL 33431-8534
Telephone:    (561) 416-0170
Facsimile:    (561) 416-0171

By:   /s/ Joel B. Rothman
      Joel B. Rothman
      Florida Bar No. 0098220
      jrothman@seidenlaw.com
      Misha J. Kerr
      Florida Bar. No.0039652
      mkerr@seidenlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___20th___ day of December, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left:40%">

SEIDEN, ALDER, MATTHEWMAN & BLOCH, P.A.
Attorneys for Defendants
2300 Glades Road, Suite 340 West
Boca Raton, FL 33431-8534
Telephone:    (561) 416-0170
Facsimile:    (561) 416-0171

By: __/s/Joel B. Rothman_____
    Joel B. Rothman
    Florida Bar No. 0098220
    jrothman@seidenlaw.com
    Misha J. Kerr
    Florida Bar. No.0039652
    mkerr@seidenlaw.com

</div>

## SERVICE LIST
### OSVALDO A. IZQUIERDO COLON, an individual, and d/b/a BEST DEAL PERFORMANCE, Plaintiff, v. JET PERFORMANCE PRODUCTS, INC., a California corporation, Defendant
### CASE NO. 07-21705-CIV-KING/GARBER
### United States District Court, Southern District of Florida

David P. Reiner, II, Esquire
Florida Bar No. 416400
dpr@reinerslaw.com
Reiner & Reiner, P.A.
9100 So. Dadeland Blvd., Suite 901
Miami, Florida 33156
Telephone: 305-670-8282
Facsimile: 305-670-8989
(Attorneys for Plaintiff)

C:\Documents and Settings\sbrown\Local Settings\Temp\MSJ (mjk).wpd